UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JIMMY J. NEWELL, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | )    Case No: 1:14-CV-304-CLC-SKL |
| v. | ) |
| | ) |
| ERIC WATSON, TYLER PITTS, and | ) |
| GLEN DUNN, | ) |
| | ) |
|     *Defendants*. | ) |

# **M E M O R A N D U M**

Plaintiff Jimmy J. Newell, a *pro se* prisoner, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) In addition to a laundry list of complaints regarding conditions at the Bradley County Justice Center (the "Jail"), Plaintiff alleges he was subjected to excessive force at the hands of two of the defendants on three occasions. Defendants Eric Watson, Tyler Pitts, and Glenn Dunn have jointly moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. (Doc. 12.) Plaintiff has not responded.

The Court also has before it several additional motions, including Plaintiff's motion to strike several of Defendants' defenses (Doc. 10), Plaintiff's motion for a temporary restraining order, preliminary injunction and permanent injunction (Doc. 14), Plaintiff's motion for discovery (Doc. 16), Defendants' motion for a protective order (Doc. 17), Defendants' motion to dismiss for lack of prosecution (Doc. 18), Plaintiff's motion to strike Defendants' motion to dismiss for failure to prosecute (Doc. 20), and Plaintiff's motion to appoint counsel (Doc. 21).

For the reasons set forth below, Defendants' motion to dismiss will be **GRANTED** (Doc. 12) and Plaintiff's complaint will be **DISMISSED** (Doc. 1). The remaining motions will be **DENIED AS MOOT** (Docs. 10, 14, 16, 17, 18, 20, 21).

**I. Background**

Plaintiff's complaint consists of four specific allegations of individualized abuse (claims 1–4 below; the "abuse claims") along with fourteen or so general complaints about the Jail (claims 5–18 below; the "conditions-of-confinement claims"). For the purposes of the motion to dismiss, the Court accepts as true the factual allegations in the complaint and construes them in the light most favorable to Plaintiff. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The following facts are gleaned from Plaintiff's complaint:

1. On October 13, 2013, Defendant Pitts entered Plaintiff's cell and punched him in the face.[1]

2. On April 6, 2014, Defendant Dunn placed Plaintiff in restraints and inflicted pain on him, "torturing" him while Plaintiff was naked.

---

[1] Defendants argue this claim is barred by the statute of limitations. The limitations period for § 1983 actions is determined by reference to the state statute of limitations for personal-injury actions. *Eidson v. Tenn. Dept. Children Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable statute is Tennessee Code Annotated § 28–3–104, which provides a one-year limitations period. *See id.*; *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997).

Defendants assert that "[w]hile Plaintiff alleges that the incident occurred on October 13, 2013, the Complaint was not filed until October 16, 2014, more than one year later." (Doc. 13 at 8.) Defendants fail, however, to account for the prison mailbox rule. Under that rule, a complaint is deemed filed when it is placed in the prison mailing system. *See Houston v. Lack*, 487 U.S. 266 (1987) (holding that a pleading is "filed" by a pro se prisoner when it is given to a prison official for mailing). Although the record does not reveal the precise date Plaintiff delivered his complaint to prison officials for mailing, Plaintiff signed the complaint on October 5, (*see* Doc. 1 at 6; *see also* Doc. 2 at 1 (displaying the same date on Application for Leave to Proceed In Forma Pauperis)), and the Clerk's Office file-stamped the complaint on October 16 (*see* Doc. 1 at 1). For the complaint to be untimely, Plaintiff would have had to hold the complaint for nine days after signing it before giving it to prison officials on October 14— leaving only two days for internal processing, delivery to the postal service, transit from Bradley County to Chattanooga, and receipt and processing by the Clerk's Office. The Court thinks the more likely scenario is that Plaintiff delivered the complaint for mailing shortly after signing it, leaving around a week for processing and transit before the Clerk's Office file-stamped the complaint on October 16. The Court therefore concludes this claim is not time-barred.

3. On October 9, 2014, Defendant Dunn "brutally assaulted" Plaintiff while he was confined in handcuffs and shackles.

4. On one occasion, Plaintiff was confined to his cell for two days with no lights, water, or toilet paper.

5. The Jail serves unhealthy meals, heavy on starches and low in protein. The inmates are constantly hungry as a result.

6. The Jail does not offer substance abuse treatment programs.

7. Both the time and space allotted for inmate exercise are inadequate.

8. Mattresses and linens are stained and have an unpleasant odor due to mold and mildew. Inmates' underwear is only washed every two weeks.

9. The Jail has plumbing problems:

   a. The showers are moldy and in disrepair.

   b. Plaintiff has no hot water in his cell.

10. The Jail is overcrowded. Inmates often sleep on the floor.

11. Plaintiff has no access to legal resources, case law, or mail.

12. Plaintiff has no access to religious programs or services.

13. Plaintiff has no access to educational, vocational, or rehabilitative programs.

14. Mail is restricted to postcards, which somehow limits access to halfway houses.

15. The Jail does not define or provide an inmate grievance process.

16. Telephone access is inadequate.

17. The Jail does not provide access to newspapers or television news.

18. Inmates in "D-Seg" are subjected to harsh conditions:

   a. Access to reading material and legal resources is denied;

3

Case 1:14-cv-00304-CLC-SKL   Document 23   Filed 03/29/16   Page 3 of 19   PageID #: 126

b. Inmates cannot exercise while wearing leg shackles and handcuffs; and

c. Inmates are denied access to personal hygiene items like soap and toothpaste.

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Analysis

Defendants argue Plaintiff has failed to state a claim against any Defendant in either their official or individual capacities. (Doc. 13.) The Court will first examine the viability of any individual-capacity claims against Defendants and will then assess Plaintiff's official-capacity claims.

### A. Individual-Capacity Claims

Plaintiff does not state explicitly whether his suit is directed toward the defendants in their individual or official capacities. "While it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the

4

course of proceedings otherwise indicates the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (citation omitted). Under the course-of-proceedings test, a court "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity." *Id.* n.1 (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). *Moore*, 272 F.3d at 772.

### 1. Defendant Watson

The Court concludes Plaintiff did not intend to sue Defendant Watson in his individual capacity. First, in the caption of his suit, Plaintiff named "Eric Watson, as Sheriff of Bradley County, Tennessee" as a defendant. (Doc. 1.) This indicates an intent to sue Defendant Watson in his capacity "as Sheriff of Bradley County, Tennessee." Confirming this reading is the complete absence in the complaint of any allegation Defendant Watson was personally involved in any of the alleged violations of Plaintiff's constitutional rights.[2] For these reasons, the Court concludes Plaintiff has alleged only official-capacity claims against Defendant Watson.

### 2. Defendants Pitts and Dunn

Defendants contend Plaintiff has also failed to adequately allege individual-capacity claims against Defendants Pitts and Dunn. They draw this conclusion solely from the fact Defendants Pitts and Dunn are referred to in the complaint by both their names and their titles. (*See* Doc. 13 at 5.) To the contrary, the Court finds from a review of the overall context of the

---

[2] Even a supervisory-capacity claim requires a showing that the supervising official "directly participated, encouraged, authorized or acquiesced in" the alleged unconstitutional conduct. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2001) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).

5

case and the course of proceedings that there are sufficient indicia of individual liability to put Defendants on notice Plaintiff intended to sue Defendants Pitts and Dunn in their personal capacities. *See Moore*, 272 F.3d at 772.

Looking first to the nature of Plaintiff's claims, the Court notes Plaintiff alleges Defendants Pitts and Dunn each individually assaulted him. Plaintiff does not contend these assaults were the result of any overarching County policy or custom, nor are there any indicia of such on the face of his complaint. *See Biggs*, 66 F.3d at 61 (noting the absence of any allegation that the challenged action was in accord with governmental policy or custom is an indication the suit is an individual-capacity suit). This inference is corroborated by the fact that Plaintiff seeks actual and compensatory damages in partial relief of his injuries. *See id.* ("Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits.") Apparently Defendants have also read the complaint this way; they have asserted, among other defenses, that they are entitled to qualified immunity. (Doc. 8 at 1); *see Biggs*, 66 F.3d at 61 ("Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." (citation omitted)). Based on these three factors, the Court concludes Plaintiff is seeking to hold Defendants Pitts and Dunn personally liable in this action.

Having determined Plaintiff has alleged individual-capacity claims against Defendants Pitts and Dunn, the Court must now determine whether Plaintiff's conditions-of-confinement and abuse claims survive Defendants' 12(b)(6) motion.

Notably, Plaintiff does not allege Defendants Pitts and Dunn are in any way responsible for his general conditions of confinement. Thus, he fails to state a facially plausible claim that

they are individually liable for these claims. *See Iqbal*, 556 U.S. at 678. Plaintiff's three specific allegations of abuse at the hands of Defendants Pitts and Dunn, however, require a closer look.[3]

"[T]he Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment excessive-force claim is comprised of both an objective and a subjective component. *Farmer*, 511 U.S. at 833–36. The objective element of the claim requires a plaintiff to show his injury was "'harmful enough' to establish a constitutional deprivation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The seriousness of the injuries is not dispositive, however; this component is met whenever officials "maliciously and sadistically use force to cause [more than *de minimis*] harm . . . whether or not significant injury is evident." *Id.* at 9–10.

The subjective inquiry focuses on whether a defendant possessed a culpable state of mind. In the context of excessive force, the central question here is one of intent—whether the defendant applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. In answering this question, courts consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Whitley,* 475 U.S. at 321).

---

[3] Plaintiff's fourth abuse claim is that he was abandoned in a cell for two days without light, water, or toilet paper. (Doc. 1 at 5.) Because Plaintiff does not identify Defendants Pitts or Dunn—or indeed any person—as being responsible for this incident, he lacks a facially plausible individual-liability claim against either of them for this claim.

7

Here, the Court assumes the beatings Plaintiff tersely alleges satisfy the objective component of an Eighth Amendment claim. Nonetheless, Plaintiff has not pleaded sufficient facts from which the Court may assess the subjective component of his abuse claims. Regarding the first incident, Plaintiff alleges that Defendant Pitts "entered into the Plaintiff[']s cell and punched him in the face. The Plaintiff was given medical treatment for his injuries." (Doc. 1 at 4.) Taking this statement at face value, it is certainly conceivable that Defendant Pitts struck Plaintiff out of malicious or sadistic intent. But on these minimal facts, unsupported by any allegations regarding the circumstances in which the force was used or the extent of the injury inflicted, the Court finds it just as likely that Defendant Pitts exercised force against Plaintiff for legitimate disciplinary reasons. Given this "obvious alternative explanation" for Defendant Pitts's use of force, the malicious motivation Plaintiff asks the Court to infer "is not a plausible conclusion." *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted).

Describing the second incident, Plaintiff asserts that Defendant Dunn "placed the Plaintiff in restraints and inflicted physical pain, while naked, torturing the Plaintiff. The Plaintiff was unable to defend himself." (*Id.*) By labeling Defendant Dunn's use of force "tortur[e]," Plaintiff at least suggests this incident was a malicious act, rather than a legitimate disciplinary action. But to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must go *beyond* "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (citations omitted) (quoting *Bell Atl. Corp.*, 550 U.S. at 555, 557). Here, Plaintiff includes no details about the reason for the use of force, the amount of force inflicted, the extent of the pain Plaintiff suffered, or anything else

that would permit the Court to plausibly conclude Defendant Dunn violated the Eighth Amendment.

The same is true of Plaintiff's third allegation of excessive force. Plaintiff alleges simply that Defendant Dunn "brutally assaulted me again while handcuffed and shackled." (Doc. 1 at 5.) Again, while Plaintiff's use of the term "brutal[]" to describe Officer Dunn's actions hints at an improper motive, without further factual enhancement, the Court is simply unable to reasonably infer that Defendant Dunn is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.

Plaintiff's conclusory abuse claims present an all-but-textbook example of insufficient pleading. *See id.* at 683 (holding deficient a claim of prisoner-beating which lacked "any factual allegation sufficient to plausibly suggest" a culpable state of mind on the part of the defendants). As the Court has already concluded the remainder of Plaintiff's individual-capacity claims fail to state a claim upon which relief may be granted, the Court will **GRANT** Defendants' motion to dismiss as to all of Plaintiff's individual-capacity claims.

### B. Official-Capacity Claims

The Court now turns to Plaintiff's claims against Defendants Watson, Pitts, and Dunn in their official capacities. When a government employee is sued in his or her official capacity, the suit is treated as an action against the local governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Thus, the Court will analyze all of Plaintiff's official-capacity claims against Defendants as claims against Bradley County. To state a viable claim against a governmental entity for injuries under § 1983, a plaintiff must allege that the violation of his constitutional rights was the result of some policy or custom attributable to the entity. *Monell v. New York Dept. Soc. Servs.*, 436 U.S. 658, 690–91

(1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245–46 (6th Cir. 1989). A plaintiff such as Newell must therefore show two elements: first, that a constitutional violation occurred, and second, that a Bradley County policy or custom caused the harm. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Regarding this second element, Plaintiff must "identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy." *See Garner v. Memphis Police Dept.*, 8 F.3d 358, 363–64 (6th Cir. 1993).

### 1. Abuse Claims

As the Court observed above, Plaintiff's specific abuse claims are spare: short on words, but also—and more importantly—short on supporting factual content. This paucity is also significant to the Court's official-capacity analysis. Specifically, Plaintiff has not identified any policy or custom authorizing or condoning these particular instances of abuse. Nor does Plaintiff provide any facts from which the Court could reasonably infer the presence of such a policy or custom. Even under the liberal pleading standard provided by Rule 8, the Court cannot credit Plaintiff's assertions—offered without a shred of supporting factual material—that Bradley County has a policy or custom of wantonly torturing naked, defenseless prisoners, or consigning prisoners to unlighted cells while depriving them of water and toilet paper for days at a time. *See Iqbal*, 556 U.S. at 678. Plaintiff's four abuse claims thus fail of stating a claim against Defendants in their official capacities.

### 2. Conditions-of-Confinement Claims

Plaintiff also submits that several conditions of his confinement violate his constitutional rights. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v.*

10

*McKinney,* 509 U.S. 25, 31 (1993). Consequently, prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer,* 511 U.S. at 832 (internal quotation marks omitted). However, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only extreme deprivations—those that "deny[] the minimal civilized measure of life's necessities"—will be found to violate the Eighth Amendment. *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).

Plaintiff makes fourteen conditions-of-confinement claims, several of which have multiple sub-claims. All fourteen fail to state a claim upon which relief may be granted, although not all for the same reason. Several claims fall short in that they are either mere legal conclusions or too fact-poor to cross "the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680–81 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). Others miss the mark because, even assuming the alleged condition exists and is the result of a Bradley County policy or custom, it does not violate the Eighth Amendment. Finally, several claims fail because Plaintiff has not shown that he suffered any injury from the alleged condition.[4]

---

[4] Indeed, the Court notes that most of Plaintiff's conditions-of-confinement claims—including several the Court dismisses on other grounds—fail to allege any personal injury stemming from the condition, appearing instead to be asserted on behalf of the inmates generally. (*See, e.g.*, Doc. 1 at 4 ("[I]nmates are constantly hungry."); *id.* ("Inmates are often sleeping on the floor . . . .").) To the extent this is the case, the claims are alternatively due to be dismissed for lack of standing. *See Blanton v. Bedford Cty. Sheriff's Dep't*, No. 4:15-CV-14-HSM-WBC, 2016 WL 447490, at *3 (E.D. Tenn. Feb. 4, 2016) ("Typically, a prisoner has standing to assert his own Eighth Amendment rights, but not those of other inmates." (citing *Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990))).

### a. Conclusory Claims

*Inadequate Exercise and Telephone Access*

Plaintiff's conclusions that inmates have inadequate time and space to exercise and that telephone access is inadequate are precisely that: conclusions. They represent his subjective opinions that these conditions are constitutionally impermissible, but they do not come with any supporting factual allegations that would allow the Court to reasonably infer that Plaintiff's Eighth Amendment rights have been violated. Plaintiff has not pleaded any facts regarding the amount of time or space afforded for exercise, the frequency of the exercise allowed, the types of exercises permitted or prohibited, the existence *vel non* of any conditions for inmate exercise, etc. The same is true of his telephone-access claim. Putting aside the fact that inmates are not entitled to unlimited telephone use, *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), the complaint contains no allegations regarding conditions of telephone access or the length or frequency of calls permitted by the Jail, or *any* factual allegations to help the Court understand why the access provided by the Jail is not adequate. These conclusions are not entitled to be presumed true, *see Iqbal*, 556 U.S. at 679; thus they fail to state a claim upon which relief may be granted.

*No Access to Certain Programs or Media*

Plaintiff's claims that he has no access to educational, vocational, or rehabilitative programs or to newspapers or television lack sufficient factual foundation for the Court "to infer more than the possibility of misconduct." *Id.* Beyond bare assertions that he has "no access" to the named resources, Plaintiff has not pleaded any facts regarding these claims. Even assuming blanket bans on viewing television, receiving newspapers, or attending educational, vocational, or rehabilitative programs constitute cruel and unusual punishment, the complaint merely alleges

12

a situation that is *consistent* with such violations. A more plausible reading of Plaintiff's "no-access" allegations is that the Jail has denied him access to these resources for legitimate reasons. Perhaps Plaintiff is a particularly high-risk prisoner, or perhaps he has had these privileges revoked for a period of time. Given these "obvious alternative explanation[s]" for Plaintiff's lack of access to religious, educational, vocational, or rehabilitative programming, or to newspapers and television, the Court concludes these claims do not plausibly suggest Bradley County has violated Plaintiff's constitutional rights. *See id.* at 681 (concluding allegations of conduct consistent with invidious discrimination failed to state a claim "given more likely explanations").

### *Mail Restrictions*

Plaintiff's allegation that "[m]ail is restricted to postcards only" is similarly deficient. Inmates generally have a constitutional right to send and receive mail. *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir. 1995). Nevertheless, prison policies restricting that right are permissible if they are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Given the stage of the proceedings, the Court lacks sufficient information to assess whether the alleged policy is actually a Bradley County policy, and if so, whether it is supported by sound penalogical interests. However, the Court can, at this stage, assess the sufficiency of Plaintiff's pleading on this point.

Having done so, the Court concludes it is deficient. Plaintiff has pleaded no additional facts about the alleged postcard rule. For example, he does not allege anything about the duration of the restriction, to whom the restriction applies, or whether it is absolute, partial, or contingent in nature. Assuming that a postcard-only policy would constitute cruel and unusual punishment, the complaint merely alleges a state of affairs *consistent* with such a policy. An

13

obvious alternative explanation for the restriction is that the Jail has imposed this restriction on him as a temporary sanction, or to provide an incentive for better behavior. *Cf. Beard v. Banks*, 548 U.S. 521, 530 (2006) (finding "the need to motivate better behavior on the part of particularly difficult prisoners" to be a legitimate penalogical interest justifying a restrictive mail policy). Because Plaintiff fails to allege sufficient facts to push his claim from possible to plausible, he has not stated a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 679.

*Lack of Nutritionally Balanced Meals*

Under the Eighth Amendment, prisoners must be provided meals nutritionally sufficient to sustain their normal health. *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977). Plaintiff claims that the meals provided are "full of starches, without protein," and that the "inmates are constantly hungry." (Doc. 1 at 4.) But Plaintiff does not allege any details about the size, frequency, ingredients, or caloric content of the meals. Nor does he allege that he has lost weight or suffered any ill effects from the provided diet, other than being hungry. *Cf. Ward v. Gooch*, 2010 WL 4608292, *6 (E.D.Ky. Nov. 5, 2012) (holding complaint stated a claim where it alleged that inmate who was fed 200 to 700 calories a day had lost over 60 pounds). The Court concludes that Plaintiff has not provided sufficient factual support to state a plausible Eighth Amendment claim on this issue.[5]

### b. Conditions that Do Not Violate the Constitution

A number of Plaintiff's allegations fail of stating a claim because, even if the Court assumes that Bradley County has a policy or custom authorizing the exact conditions of which he complains, the Eighth Amendment has not been violated.

---

[5] In 2014, this Court disposed of a similar claim filed by Plaintiff for substantially the same reasons. *See Newell v. Ruth et al.*, No. 1:11-cv-86, 2014 WL 4411045, at *8 (E.D. Tenn. Sept. 8, 2014).

*Lack of Substance Abuse Treatment or Other Rehabilitative Programs*

Plaintiff alleges the Jail provides inadequate medical care because it does not offer substance abuse treatment. Plaintiff does not contend that he personally has a serious medical need for substance abuse treatment, so the Court declines to construe this claim as one for denial of medical care or deliberate indifference. Rather, the Court understands Plaintiff to allege that Bradley County does not offer generalized substance abuse treatment options as a matter of policy. But as the Sixth Circuit has pointed out, "a prisoner has no constitutional right to rehabilitation, education, or jobs." *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). In the absence of a right to drug-abuse rehabilitation, Plaintiff cannot state a claim that the failure to provide such treatment violates his Eighth Amendment rights.

For the same reason, Plaintiff's allegations that the Jail provides no access to educational, vocational, or rehabilitative programs also fail as a matter of law.

*Unclean Bedding and Laundry*

Plaintiff alleges the bedding is stained and stinking due to mold, and the inmates' underwear is only washed every two weeks "by indigent inmates." (Doc. 1 at 4.) The Court finds that these conditions, as alleged, do not constitute such extreme circumstances that they deny Plaintiff "the minimal civilized measure of life's necessities," *Hudson*, 503 U.S. at 9, thus violating the Eighth Amendment. *See Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *9 (E.D. Mich. July 23, 2013), *aff'd* (May 15, 2014) (inmate's claims that he had to sleep on a "filthy mattress" were unavailing, absent any allegation that he "suffered lasting or substantial harm to his health as a result"); *Clark v. Lindemuth*, No. 2:12-CV-159, 2012 WL 5198438, at *3 (W.D. Mich. Oct. 19, 2012), *aff'd* (Sept. 19, 2013) (providing an inmate with stained and dirty

15

bedding does not constitute the kind of "extreme deprivation" necessary to make out an Eighth Amendment claim); *Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (requiring inmates to sleep on "stained mattresses" did not violate the Eighth Amendment); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004) (failing to provide laundry service and requiring inmates to wash their own clothes in sinks instead does not violate the Eighth Amendment).

*Plumbing Problems*

Plaintiff asserts the showers in the Jail are moldy and in disrepair, and that the hot water in his cell does not work. The Court finds that these conditions, as alleged, do not constitute such extreme circumstances that they deny Plaintiff "the minimal civilized measure of life's necessities," *Hudson*, 503 U.S. at 9, thus violating the Eighth Amendment. *See Lyle v. Montgomery Cty. Jail*, No. 3:15-CV-0480, 2015 WL 1954350, at *3 (M.D. Tenn. Apr. 28, 2015) (allegations of mold in sinks and showers, without any alleged injury to inmate's health, insufficiently serious to establish an Eighth Amendment violation); *Cameron v. Howes*, No. 1:10-CV-539, 2010 WL 3885271, at *8 (W.D. Mich. Sept. 28, 2010) ("[T]he mere presence of some mold and standing water in the bathroom and shower areas does not create a condition 'intolerable for prison confinement.'" (quoting *Rhodes,* 452 U.S. at 348)); *Preston v. Smith*, 750 F.2d 530, 534 (6th Cir. 1984) (no Eighth Amendment violation where prisoner alleged his cell lacked hot water).

*Overcrowding*

Plaintiff alleges the Jail is overcrowded, which results in less space per inmate and less time to use common facilities, such as showers and telephones. Plaintiff also asserts that inmates often sleep on the floor. While severe overcrowding can rise to the level of a constitutional violation, *Brogsdale v. Barry*, 926 F.2d 1184, 1188 (D.C. Cir. 1991), "overcrowding is not, in

16

Case 1:14-cv-00304-CLC-SKL   Document 23   Filed 03/29/16   Page 16 of 19   PageID #: 139

itself, a constitutional violation," *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). Rather, a viable claim must allege that the "overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation." *Id.* (citing *Wilson*, 501 U.S. at 298 and *Rhodes*, 452 U.S. at 345–48). Plaintiff has made no such allegations here. Nor does being forced to sleep on the floor, without more, constitute an extreme deprivation of the type society is unwilling to tolerate. *See Hubbard v. Taylor*, 538 F.3d 229, 234–35 (3rd Cir. 2008) (sleeping on a mattress on the floor for 3–7 months due to overcrowding is not a constitutional violation).

<u>No Inmate Grievance Process</u>

Plaintiff alleges the Jail does not provide or define an inmate grievance process. But the Sixth Circuit has repeatedly held that inmates are not constitutionally entitled to an effective prison grievance process. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Accordingly, even if the Jail does lack such a process, this claim fails of stating a claim upon which relief may be granted.

### c. Claims for which There Is No Allegation of Personal Injury

<u>No Access to Legal Resources</u>

Plaintiff alleges the Jail provides no access to legal resources or related mail. "Although prisoners have a constitutional right of meaningful access to the courts, a prisoner must demonstrate actual prejudice to pending or contemplated litigation to state a claim." *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002). This means that a plaintiff "must plead and prove prejudice stemming from the asserted violation, [such as] the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff has not pleaded that this alleged policy has in any way impeded any

17

pending or impending litigation he wishes to undertake. Thus, he has not made out a viable "access-to-the-courts" claim.

*No Access to Religious Programs*

Plaintiff alleges there is no access to religious programs or services. While inmates generally have the right to exercise their religion while incarcerated, *see, e.g.*, *Holt v. Hobbs*, 574 U.S. ___, ___, 135 S. Ct. 853, 860 (2015), Plaintiff has not alleged that the absence of Jail-sponsored religious programming has interfered in any way with his religious exercise, or that it imposes a substantial burden on his sincerely held religious beliefs. Absent such allegation, this complaint fails to state a claim. *See Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) ("Under § 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'" (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001))). Thus, Plaintiff fails to state a valid claim based on this allegation.

*Harsh Conditions in "D-Seg"*

Plaintiff alleges inmates in "D-Seg" are subjected to various restrictions, including being denied reading material and legal resources, being cuffed and shackled, and being denied soap and toothpaste. Plaintiff fails to allege, however, that he personally is or has been confined to "D-Seg." As noted above, Plaintiff lacks standing to pursue claims on behalf of other inmates. Because Plaintiff does not allege that the Jail's "D-Seg" policies have deprived him of his right to be free of cruel and unusual punishment, Plaintiff fails to state a claim upon which relief may be granted.

As Plaintiff has failed to state an official-capacity claim against Defendants regarding either his allegations of abuse or his complaints regarding his conditions of confinement, the

18

Court will **GRANT** Defendants' motion to dismiss as to all of Plaintiff's official-capacity claims.

IV.     **Conclusion**

Plaintiff has failed to state a claim against any of the Defendants, in either their individual or official capacities, for any of his abuse or conditions-of-confinement claims. In general, Plaintiff's grievances either fail because they are so conclusory as to flunk the plausibility test set forth in *Iqbal* and *Bell Atlantic Corp.* or founder for lack of a constitutional entitlement. The Court is left with the impression that the abbreviated and generalized nature of Plaintiff's pleading is a strategic attempt to conceal the infirmity of his claims. This is the second suit of this nature Plaintiff has filed in this Court. *See Newell v. Ruth et al.*, No. 1:11-cv-86, 2014 WL 4411045, at *8 (E.D. Tenn. Sept. 8, 2014). Plaintiff is warned that further frivolous filings may subject him to sanctions.

Defendants' motion to dismiss (Doc. 12) will be **GRANTED** and Plaintiff's complaint (Doc. 1) will be **DISMISSED**. All pending motions (Docs. 10, 14, 16, 17, 18, 20, 21) will be **DENIED AS MOOT**.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**